

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00159-CR

DANIEL GLENN OSTRANDER                                        APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Daniel Glenn Ostrander appeals his conviction for failure to comply with the statutory registration requirements for sex offenders. *See* Tex. Code Crim. Proc. Ann. art. 62.102(a) (West 2006). In five points, Ostrander argues the evidence was insufficient to support his conviction and the trial court erred by overruling his objections to improper jury argument and hearsay

----

[1]*See* Tex. R. App. P. 47.4.

evidence. We modify the judgment and affirm it as modified. *See* Tex. R. App. P. 43.2(b).

## I. BACKGROUND

On January 28, 1986, Ostrander was indicted for sexual assault of a child.[2] The indictment contained an enhancement paragraph, alleging that Ostrander had been convicted of burglary of a motor vehicle in 1984.[3] On July 29, 1986, Ostrander pleaded guilty to sexual assault of a child, and the trial court, under a plea-bargain agreement, sentenced Ostrander to 25 years' confinement. The judgment did not contain a finding regarding the enhancement paragraph.

Ostrander was released on parole on July 23, 2010.[4] As part of his parole conditions, Ostrander was required to register with the Fort Worth Police Department ("the department") within seven days of his release or at a later date if the department's policies provided for a later registration date. Ostrander also was required to wear an ankle monitor.

---

[2]Ostrander was eighteen at the time of the offense, and the victim was fifteen. The evidence conflicted regarding whether the victim was Ostrander's friend or a stranger.

[3]Although unclear from the record, it appears Ostrander was seventeen when this offense was committed.

[4]The record indicates that Ostrander was unsuccessfully released on parole before this date. Further, Ostrander was convicted of aggravated assault with a deadly weapon on June 20, 2005, and was sentenced to four years' confinement to be served consecutively to his 25-year sentence.

After his release, Ostrander began living at the Fort Worth Transitional Center ("the center"), which is "a halfway house for people on parole who have no other place[] to go when they come out of the penitentiary." While at the center, parolees may not leave without permission and must enter all appointments and other reasons for leaving the center on a daily-activity log. Ostrander's case worker made an August 18 appointment for Ostrander to register at the department. Although this appointment was made for later than seven days after Ostrander's July 23 release, the department was "backlogged," which resulted in appointments for sex-offender registration being made for "several weeks after [a parolee's] arrival" in Fort Worth.

On August 11, Ostrander's parole officer, Salvatore Caruso, reminded Ostrander verbally and in writing that he had a registration appointment on August 18. On August 14, Caruso discovered that the monitoring service had lost contact with Ostrander's ankle monitor, which meant that the "strap had been removed intentionally or unintentionally." Caruso contacted the center and discovered that Ostrander "was no longer in residency there" and had left the center without prior approval the same day the monitoring service lost contact with Ostrander's ankle monitor. Ostrander did not appear for his registration appointment on August 18. On October 27, Ostrander voluntarily turned himself in to police officers.

Ostrander was indicted for failure to register as a sex offender with a habitual-offender notice.[5] Ostrander pleaded not guilty on October 25, 2011, and a jury was unable to reach a unanimous verdict. A second trial began April 9, 2012, and Ostrander pleaded not guilty to the indictment and not true to the habitual-offender notice.[6] The second jury found Ostrander guilty of failing to comply with the sexual-offender-registration requirements, found the habitual-offender notice true, and sentenced him to 50 years' confinement.

## II. DISCUSSION

### A. EVIDENCE SUFFICIENCY

In his first two points, Ostrander argues that the evidence is insufficient to support his conviction, which violates his rights to due process under the United States and Texas Constitutions. Indeed, due process requires that a conviction be supported by sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87 (1979). In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[5]This notice alleged Ostrander's 1984 conviction for burglary of a vehicle and 2005 conviction for aggravated assault with a deadly weapon.

[6]Although the judgment reflects that Ostrander pleaded true to the habitual-offender notice, the trial court actually entered a plea of not true on Ostrander's behalf and charged the jury that Ostrander had pleaded not true to the habitual-offender notice.

4

doubt. *Id.* at 319, 99 S. Ct. at 2789; *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). The standard of review is the same for direct and circumstantial-evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Here, a hypothetically correct jury charge required proof that (1) Ostrander had a reportable conviction, (2) he was required to register, (3) he failed to comply with that requirement, and (4) his duty to register had not expired. *See Crabtree v. State*, 389 S.W.3d 820, 824–25 (Tex. Crim. App. 2012). Ostrander limits his insufficiency arguments to the State's alleged failure to prove that he failed to comply with the registration requirement. Specifically, Ostrander asserts that Caruso's actions obstructed him from fulfilling the registration requirement; thus, there is no evidence that he acted intentionally or knowingly when he failed to register.

Although the sex-offender-registration statute does not expressly require proof of a mental state for prosecution of a failure to register, the indictment in this case alleged that Ostrander "intentionally or knowingly" failed to register. *See* Tex. Code Crim. Proc. Ann. art. 62.102(a); Tex. Penal Code Ann. § 6.02(b)–(c) (West 2011). Therefore, we must review the record to determine if the State

5

presented sufficient evidence of Ostrander's knowing or intentional failure. *See Harris v. State*, 364 S.W.3d 328, 335 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Proof of a culpable mental state almost always depends upon inferences found from circumstantial evidence, and this case is no different. *See Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989); *Varnes v. State*, 63 S.W.3d 824, 833 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Here, Ostrander had an appointment to register, which Caruso reminded him of verbally and in writing seven days before the appointment. Ostrander left the center without permission four days before the appointment and did not register on August 18 as scheduled. Caruso's actions that Ostrander claims kept him from registering occurred before Ostrander left the center and before Caruso reminded him of the registration appointment. Caruso's alleged obstreperous actions did not interfere with or prevent Ostrander's appearance at the department to register. The facts show that Ostrander knew he had an appointment to register but left the center without his ankle monitor and did not appear for his appointment four days later. This evidence would allow a rational fact-finder to conclude Ostrander knowingly or intentionally failed to register as a sex offender as required by article 62.102(a). *See, e.g.*, *Harris*, 364 S.W.3d at 335–36; *Grant v. State*, 154 S.W.3d 684, 686–87 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *Varnes*, 63 S.W.3d at 833. We must defer to this determination. *See Harris*, 364 S.W.3d at 336. Because the evidence was sufficient to support the fact-finder's determination of guilt, his due-process rights

were not violated by a lack of evidence. *See, e.g., Sennett v.* State, No. 11-11-00089-CR, 2013 WL 1786025, at *3 (Tex. App.—Eastland Apr. 25, 2013, no pet.). We overrule points one and two.

## B. JURY ARGUMENT

In his third and fourth points, Ostrander argues that the trial court erred by denying his objections to two of the State's jury arguments during the punishment phase of the trial. To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). If a jury argument exceeds the bounds of proper argument, a trial court's erroneous overruling of a defendant's objection is not reversible error unless it affected the appellant's substantial rights. Tex. R. App. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000).

Ostrander asserts that the State improperly brought up his "alleged cutting off of a monitor":

> [The State]: Let's talk a bit about intentionally or knowingly. During jury selection I described to you folks intentionally is on purpose. I meant to do it. It wasn't an accident. Okay? Intent can be formed in an instant. Premeditation is not required for any crime in Texas, not for speeding, not up to capital murder. Intent can be formed like this (indicating). So can regret.

7

[Defense Counsel]: You[r] Honor, I'm going to object to any reference to cutting off a monitor. I don't think there was anybody that testified about seeing him cut off a monitor.

THE COURT: I'll overrule the objection.

This argument does not refer to the ankle monitor in any apparent way. Ostrander does not expound on how this argument impermissibly referred to his ankle monitor but merely states that the argument was "highly prejudicial" and "improper."[7] Further, this argument was a reasonable deduction from the evidence that Ostrander left the center without permission and without his ankle monitor. The trial court did not err, and we overrule point three.

The second jury argument Ostrander complains was erroneous is the State's reference to the underlying facts of the 1986 sexual assault:

[The State]: Folks, we're actually not permitted to consider the circumstances of that original sex assault. He pled guilty to it. He did time for it in prison. It's adjudicated and it's finished. But if it's really important to you what it is - - and there's two types of sexual assaults of children under 17. One is statutory. People are the wrong age and have consensual sex. The other one is nonconsensual. And I urge you to look at [State's Exhibit 4]. Because next to where it says 15-year-old female, there's a box and it says who is this person in relation to you. Is it a friend?

[Defense Counsel]: Your Honor, objection. Outside the record what she just said something about.

. . . .

_____

[7]We could assume that when the record states "(indicating)," the State made a cutting gesture, but we cannot add this information to the record on our own supposition. *See Parker v. State*, 626 S.W.2d 738, 741 (Tex. Crim. App. 1982) (op. on reh'g) (stating factual assumption improper because appellate court bound by the record).

8

THE COURT:  I'll overrule the objection.

This argument was permissible as a response to Ostrander's counsel's earlier argument that "it is true . . . Ostrander went to prison at 18 years old for having sex with a 15-year-old girl . . . .  I want you to think about that, because he could be your brother, your son, your relative."  Additionally, the argument was a summation of evidence that was admitted at trial, namely State's Exhibit 4.  The trial court did not err, and we overrule point four.

### C.  HEARSAY

In his final point, Ostrander asserts that the trial court erred by overruling his hearsay objection to the admission of the center's logs and a letter the center's case-management supervisor, Jeannie Parsons, sent to the department informing it that Ostrander left the center on August 14.  At trial, Parsons testified that she did not have personal knowledge of Ostrander's leaving the center, but the logs were part of the center's records kept in the normal course of its business.  Because the logs were kept in the center's regular course of business, they were admissible under an exception to the hearsay rule.  *See* Tex. R. Evid. 803(6); *Canseco v. State*, 199 S.W.3d 437, 439–40 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).  Likewise, Parson's knowledge of Ostrander's absence from the center was derived from her review of these business records, and she wrote the letter at or near the time Ostrander left; thus, the letter qualified as an admissible business record.  *See* Tex. R. Evid. 803(6); *Infante v. State*, No. 01-

9

11-00905-CR, 2012 WL 6754834, at *4 (Tex. App.—Houston [1st Dist.] Dec. 28, 2012, no pet.). The trial court did not err in allowing this information to be admitted, and we overrule point five.

## III. CONCLUSION

We have overruled Ostrander's points; however, we must modify the judgment to reflect that Ostrander pleaded not true to the habitual-offender notice as we discussed above in footnote 6. *See Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.) (recognizing appellate court's duty to sua sponte modify judgment to show defendant pleaded not guilty when judgment erroneously noted defendant pleaded guilty). As modified, we affirm the trial court's judgment.

LEE GABRIEL
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 20, 2013