

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00046-CR

_____

CLISTER RAY THOMAS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 41776-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

## O P I N I O N

Clister Ray Thomas was convicted by a jury for failure to comply with sex-offender registration requirements[1] and was sentenced to two years' imprisonment. Thomas had previously been convicted of aggravated sexual assault in Gregg County in 1987 and was sentenced to fifteen years' imprisonment for that offense. As a result of that previous conviction, Thomas was required to register as a sex offender and to annually verify his registration information for life. *See* TEX. CODE CRIM. PROC. ANN. art. 62.101(a) (West Supp. 2012). On appeal, Thomas contends the evidence is insufficient to support his conviction. We reverse and enter a judgment of acquittal.

## I.    Background

In March 2012, Thomas moved from Upshur County to Gregg County. At that time, Thomas registered his new address with the Longview Police Department in Gregg County.[2] Thomas provided the address where he expected to reside as "1900 South Green St. # 210 Longview, TX 75602." This apartment was leased to Ashanti Jimerson. Jimerson's mother, Pamela Epsy, lived with her in the apartment. Epsy, who was Thomas' girlfriend, stayed in the apartment with Jimerson "off and on," while working. The arrangement was temporary. Thomas was present in Jimerson's apartment only when Epsy was there.

On April 3, 2012, the apartment manager was notified by Officer Jeff Hall of the Longview Police Department that Thomas was living in Jimerson's apartment. Hall presented

---

[1]TEX. CODE CRIM. PROC. ANN. art. 62.102(b)(2) (West 2006). The judgment incorrectly cites to the Texas Penal Code.

[2]The Longview Police Department is the local law enforcement authority where Thomas was required to register his change of address.

the apartment manager with paperwork documenting Thomas' sex-offender status. On receipt of this information, the manager asked that a criminal trespass warning be issued to Thomas. The manager explained that she did not know Thomas was living in the apartment and that he did not have permission to reside there with Jimerson and Epsy. Apartment policy requires that any person who resides with a tenant must submit to a background check. The policy also prohibits registered sex offenders from residing in the apartment complex. Thomas was issued a criminal trespass warning, whereby he was prohibited from returning to the property.[3]

That same day, Longview Police Officer Bennie Cooks arrested Thomas on five outstanding city warrants.[4] The Gregg County Jail book-in report reflects that Thomas provided his address as 1703 Houston Street in Longview. Epsy is listed on the book-in sheet as an emergency contact. Thomas listed Epsy's address as 1900 South Green Street, apartment 210.

Epsy testified that she resided at 1900 South Green Street in the Courtyard Apartments through October 2012. She was present when Thomas was given the criminal trespass warning. Even though he was given this warning, Thomas continued to stay in the apartment until he was arrested on June 13, 2012. Jimerson acknowledged that Thomas lived in her apartment on South Green Street. She testified that Thomas continued to live in the apartment on South Green Street after he was given the criminal trespass warning. Thomas would arrive at the apartment at night, spend the night, and leave early in the morning. According to the booking documents, Thomas was arrested at the Courtyard Apartments at 1900 South Green Street in Longview.

---

[3]Trespass warnings were issued for a period of two years, unless otherwise specified. The trespass warning was issued by Officer Dennis Phillips of the Longview Police Department.

[4]The city warrants were for traffic violations.

3

On June 13, 2012, Detective Kevin Brownlee with the Longview Police Department was contacted by a deputy from the Upshur County Sheriff's Department, who advised that Thomas had been arrested in Gregg County.[5] The deputy indicated the address on Thomas' book-in sheet was different than that listed on his sex-offender registration record. Brownlee checked the jail records on the Gregg County Sheriff's Department website and found Thomas listed his address as 1703 Houston Street in Longview. Thomas' registered address was 1900 South Green Street, Apartment 210. Brownlee attempted to locate Thomas at the Green Street address; he did not, however, check at apartment 210. Instead, Brownlee spoke with the apartment manager, who indicated Thomas was not permitted on the apartment property. Brownlee then proceeded to the book-in address Thomas provided, 1703 Houston Street. He located Thomas at this address at approximately 8:30 a.m. Brownlee spoke with Thomas, who told Brownlee that he lived at 1703 Houston Street.[6] The Longview Police Department had no record of any change of address for Thomas indicating a move from the apartment on South Green Street to 1703 Houston Street. Thomas was arrested for failing to update his address with the Longview Police Department upon moving from South Green Street to Houston Street.

Thomas testified that on June 13, 2012, he was still living in the apartment on South Green Street (where he was properly registered). Thomas conceded that he told Brownlee he

---

[5]There is no explanation as to why a Longview police officer was contacted by an Upshur County sheriff's deputy regarding an arrest in Gregg County. The date of this arrest is not reflected in the record.

[6]The June 13 conversation between Brownlee and Thomas was recorded and played for the jury. Brownlee testified that the recording indicated that he asked Thomas where he was staying, and Thomas responded that he was staying at 1703 Houston Street. This portion of the recording is inaudible. The recording did indicate, however, that Thomas stated that he was "registered right here," while speaking with Brownlee at the Houston Street location. An unidentified female, who ostensibly resided at the Houston Street address, told Brownlee that Thomas "doesn't stay here" and that "he got dropped off this morning."

4

lived at the Houston Street address, explaining that he did not want his family (referring to Epsy and Jimerson) to be evicted from their apartment for letting him stay there while he was subject to a criminal trespass warning. Thomas testified that he lied (on two occasions) when he was arrested (on April 3 and June 13) by indicating that he lived on Houston Street. He felt it was necessary to provide this address to protect his family. When Thomas listed Houston Street as his address, he had already been given the warning to stay away from the apartment on South Green Street. Thomas was arrested in Upshur County after June 2012. He provided the Houston Street address to the Upshur County arresting officer as well. Thomas explained, "I give every police officer the Houston address."

Thomas personally spoke with a clerk in the Longview office for sex-offender registration after his June 13 arrest in an attempt to change his registration to the Houston Street address. He was unable to change his registration because the owner of the Houston Street property refused to provide a written statement indicating he resided there. Thomas concedes that he never changed his registration from South Green Street. He claims, however, that he never moved from the South Green Street address, even though he was trespassing. Thomas is not currently registered anywhere that shows he has any other address other than South Green Street.

## II.    The Evidence is Insufficient to Support the Judgment

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of failure to comply with sex-offender registration requirements beyond a reasonable

5

doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

A person commits the offense of failure to comply with registration requirements if the person "is required to register and fails to comply with any requirement" of Chapter 62 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 62.102 (West 2006). Under Article 62.055(a),

> If a person required to register under this chapter intends to change address, . . . the person shall, not later than the seventh day *before the intended change*, report in person to the local law enforcement authority designated as the person's primary registration authority by the department and to the . . . officer supervising the person and provide the authority and the officer with the person's *anticipated move date and new address*.

TEX. CODE CRIM. PROC. ANN. art. 62.055(a) (West Supp. 2012) (emphasis added). Under the indictment, Thomas was only charged with failing to comply with this specific requirement. The indictment does not allege that Thomas failed to provide proof of his new address within seven days *after changing the address*.[7] *See id.*[8]

---

[7]The indictment reads,

> [O]n or about the 13th day of June, 2012, and anterior to the presentment of this Indictment, in the County and State aforesaid, CLISTER RAY THOMAS, hereinafter called Defendant, did then and there while being a person required to register with the local law enforcement authority in the

6

The application paragraph of the jury charge, unlike the indictment, did not include language concerning the failure to comply with registration requirements by failing to advise the Longview Police Department of *the anticipated move date and new address at least seven days before the move*. Rather, the jury charge read,

> You must decide whether the state has proved, beyond a reasonable doubt, four elements. The elements are that—
>
> 1. the defendant was previously convicted of aggravated sexual assault; and
>
> 2. the defendant was required to comply with the sex offender registration program under chapter 62 of the Code of Criminal Procedure; and

---

municipality where the Defendant resided or intended to reside for more than seven days to wit: Longview, Texas, and being a person required to comply with the registration requirements of Chapter 62 of the Texas Code of Criminal Procedure and having a duty to verify registration annually for life because of a reportable conviction or adjudication for Aggravated Sexual Assault, did intentionally or knowingly fail to report in person to the Longview Police Department, the local law enforcement authority in the municipality where the Defendant resided and had last registered and provide the Defendant's anticipated move date and the new address anticipated not later than the seventh day before the anticipated move date as required by the Texas Code of Criminal Procedure. . . .

[8]This Article provides,

If a person required to register under this chapter intends to change address, regardless of whether the person intends to move to another state, the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority designated as the person's primary registration authority by the department and to the juvenile probation officer, community supervision and corrections department officer, or parole officer supervising the person and provide the authority and the officer with the person's anticipated move date and new address. If a person required to register changes address, the person shall, not later than the later of the seventh day after changing the address or the first date the applicable local law enforcement authority by policy allows the person to report, report in person to the local law enforcement authority in the municipality or county in which the person's new residence is located and provide the authority with proof of identity and proof of residence.

TEX. CODE CRIM. PROC. ANN. art. 62.055(a).

> 3. the defendant was registered with the Longview Police Department as sex offender as residing at a residence in Longview, Gregg County, Texas;[9] and

> 4. the defendant changed his address for more than seven days and intentionally or knowingly failed to report in person to the Longview Police Department to register the defendant's new address.

> You must all agree on elements 1, 2, 3, and 4 listed above. If you all agree the state has failed to prove, beyond a reasonable doubt, one or more of elements 1, 2, 3, and 4 listed above, you must find the defendant "not guilty."

> If you all agree the state has proved each of the four elements above, you must find the defendant "guilty."

The jury found Thomas guilty "as charged in the indictment."

Thomas contends the evidence is insufficient to support his conviction due to a material variance between the indictment and the proof at trial. He contends that the State was required to prove that the failure to register was committed by failing "to report in person to the Longview Police Department, . . . and provide [his] anticipated move date and the new address anticipated not later than the seventh day before the anticipated move . . . ." Thomas claims he was virtually evicted from his apartment and could not have notified the authorities of a move he did not intend to make. The case was tried on the theory that Thomas moved from his apartment and subsequently failed to notify the registration authority of the move within seven days. Thomas thus complains the indictment sets out one offense and the evidence at trial attempts to prove

---

[9]Thomas conceded, in closing argument, that the State proved the first three elements at trial. "He did have a previous conviction, he was required to register, and he was registered with the Longview Police Department."

8

another offense.[10]  In reliance on *Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001),

Thomas contends his conviction cannot withstand appellate scrutiny.  In sum, Thomas seeks an

acquittal because the indictment alleged that the failure to register was committed by failing to

advise authorities seven days beforehand, but no evidence of such failure was proved.

In addressing a claim of evidentiary insufficiency, we are to determine whether any

rational jury could have found the essential elements of failure to comply with sex-offender

registration requirements beyond a reasonable doubt.  *Brooks*, 323 S.W.3d at 912.  The essential

elements of this offense are to be determined by the hypothetically correct jury charge.  *Malik v.*

*State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically correct jury charge is

"one that accurately sets out the law, is authorized by the indictment, does not unnecessarily

increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and

adequately describes the particular offense for which the defendant was tried."  *Id*.  The law as

"authorized by the indictment" includes "the statutory elements of the offense . . . as modified by

the charging instrument."  *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).  The

hypothetically correct jury charge need not, however, incorporate allegations that give rise to

---

[10]A person commits an offense if the person is required to register as a sex offender under Chapter 62 of the Texas Code of Criminal Procedure and fails to comply with any requirement of that chapter. *See* TEX. CODE CRIM. PROC. ANN. art. 62.102(a); *Young v. State*, 341 S.W.3d 417, 425 (Tex. Crim. App. 2011) ("Article 62.102 is a generalized 'umbrella' statute that criminalizes the failure to comply with any of the registration requirements set out in Chapter 62."). Chapter 62 contains numerous distinct requirements in its various statutes. *Id*. The language of Article 62.055, though, states that a sex offender has a duty to report a change of address to the proper authorities both before and after a move. The failure to do so is an offense. TEX. CODE CRIM. PROC. ANN. art. 62.102(a). However, "the Legislature intended for the unit of prosecution to be one offense for each change of address." *Young*, 341 S.W.3d at 426. Thus, Thomas incorrectly contends that he was charged with one offense and tried for another.

immaterial variances.[11] *Gollihar*, 46 S.W.3d at 256. Conversely, a material variance must be included within the hypothetically correct charge. *Id*. at 257. As explained by the high criminal court in *Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012):

> A variance in pleading and proof can occur in two different ways. First, a variance can involve the statutory language that defines the offense. This can happen when a statute specifies alternate methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves, instead, an unpled method. For example, the retaliation statute makes it a crime to threaten a "witness" or "informant." The first type of variance occurs if the State pleads only "witness" in the charging instrument and proves only the unpled element of "informant" at trial. Second, a variance can involve a non-statutory allegation that is descriptive of the offense in some way. For example, the charging instrument pleads "Mary" as the victim, but the State proves "John" at trial. Or the charging instrument pleads the offense was committed with a knife, but the State proves at trial that a baseball bat was used.[12]

*Id.* at 294 (citation omitted).

Here, the variance between the pleading and the proof is of the first type described in *Johnson*, and is, therefore, material.[13] The language of Article 62.055(a) defines an offense as

---

[11]In *Gollihar*, the indictment for theft of a go-cart stated that the go-cart was "Model 136202," but the State's evidence showed that its model was 136203. Because the model number was not an element of the offense and the defendant's guilt or innocence did not depend on the specific model of the go-cart, the variance was immaterial. *Gollihar*, 46 S.W.3d at 258.

[12]In *Johnson*, the variance was of the second type, a non-statutory allegation. There, Johnson was charged with having committed aggravated assault by intentionally or knowingly causing serious bodily injury by hitting the victim with his hand or by twisting her arm with his hand. The victim testified that Johnson threw her against a wall, which caused her serious bodily injury. The court held that the variance involved a non-statutory type of allegation. *Johnson*, 364 S.W.3d at 298.

[13]The Texas Court of Criminal Appeals has indicated that a variance analysis is unnecessary, in certain instances such as this one, where the pleading alleges one alternative method of committing an offense, but the proof is of an unpled method. This is simply a failure to prove the statutory requirements as alleged, which necessarily results in the evidence being legally insufficient. *Byrd v. State*, 336 S.W.3d 242, 257–58 (Tex. Crim. App. 2011) ("'[T]he word 'variance' ought to be used to describe instances in which there is a minor discrepancy between the facts alleged and those proved . . . .'") (quoting *Bailey v. State*, 87 S.W.3d 122, 131 (Tex. Crim. App. 2002) (Keasler, J., dissenting)).

failing to provide the local law enforcement authority with the anticipated move date and new address not later than seven days before the intended change. Article 62.055(a) also defines the offense as failing to provide proof of a new address to the applicable local law enforcement authority within seven days after changing the address. The statute simply describes alternate methods by which an offense can be committed.[14]  *See Young*, 341 S.W.3d at 427 ("Article 62.055(a) creates a duty to notify law enforcement when a relevant circumstance is present—a sex offender changes addresses—but can be violated in either of two ways."). Here, the State alleged a specific duty to report a change of address. The State alleged only one specific failure to fulfill that duty—the duty to report an intended change of address before the intended move. In sum, Thomas was indicted for a single offense of failing to report a change of address, and the State alleged he committed this offense in one specific way.

In *Geick v. State*, 349 S.W.3d 542, 547–48 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals determined that when pled in an indictment, a statutory definition becomes an element of the offense that the State must prove. In that case, Geick was indicted for theft of a bulldozer by deception. The jury charge allowed for a conviction without limiting the manner in which the theft was committed, and Geick was found guilty "'as charged in the indictment.'" *Id.* at 544. On appeal, the Fourteenth Court of Appeals acquitted Geick because there was no evidence of deception. The Texas Court of Criminal Appeals affirmed, holding that "[w]hen a statute lays out several alternative methods of committing the offense, and the indictment alleges only one of those methods, 'the law as authorized by the indictment' is limited to the method

---

[14]The failure to report a change of address is one crime per move. *Young*, 341 S.W.3d at 426.

specified in the indictment." *Id*. at 545 (quoting *Gollihar*, 46 S.W.3d at 254–55). In so holding, the high criminal court rejected the State's argument that the term "deception" as a means of committing theft was merely a definition, rather than an element of the offense, and therefore should not be a part of the hypothetically correct jury charge. *See also Cada v. State*, 334 S.W.3d 766, 776 (Tex. Crim. App. 2011) ("Under *Jackson*, the State must prove the statutory elements that it has chosen to allege, not some other alternative statutory elements that it did not allege.").

Here, the State was not required at the indictment stage to plead a narrowed method in which the duty to report a change of address could be violated. Having done so, however, "'the law as authorized by the indictment'" is limited to the method specified in the indictment. *Geick*, 349 S.W.3d at 545 (quoting *Gollihar*, 46 S.W.3d at 254–55). Accordingly, the State was required to prove, beyond a reasonable doubt, that Thomas violated his reporting requirements by failing to notify the authorities of his anticipated move date and new address seven days in advance of his intended change. A failure to prove such allegation renders the evidence legally insufficient to support the conviction.

The State acknowledges that it was required to prove Thomas failed to give seven days' advance notice of an intended move. It maintains, however, that the evidence indeed proved such failure, analogizing this case to that of *Walmer v. State*, 264 S.W.3d 114 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Walmer was found guilty of the offense of failure to comply with sex-offender registration requirements. *Id*. at 115. On appeal, Walmer claimed the evidence was insufficient

12

to support his conviction because the State did not prove that he "failed to notify the Harris County Sheriff's Department at least seven days before he moved." *Id*. at 117. Walmer claimed it was impossible to comply with this requirement because his mother unexpectedly threw him out of the house. *Id*. The evidence showed that Walmer registered, using his mother's address. Walmer testified that he lived at that address until he was "thrown out." *Id*. at 118. Walmer later testified that after his release from prison, he had been "bounc[ing] in between" his brother's apartment and his mother's house. *Id*. Walmer's mother testified that Walmer never lived with her after his release from prison. *Id*. In affirming the conviction, the court found this evidence supported a finding that Walmer failed to provide his primary registration authority of his anticipated move date and new address seven days before the intended change. "Even if his move was unexpected[,] . . . appellant still failed to provide his move date and new address to [the authorities]." *Id*.

*Walmer* is distinguishable from the present case, as there was no claim in that case of a material variance between the indictment and the evidence presented at trial. Walmer was charged with "Failure to Comply with Registration Requirements of a Sex Offender." *Id.* at 115 (citing TEX. CODE CRIM. PROC. ANN. arts. 62.055(a), 62.102(a)). In discussing the elements of proof, in *Walmer*, the Texas Court of Criminal Appeals reviewed both methods of failing to report (failing to notify of intended change of address seven days beforehand and failing to report the new residence within seven days after changing residence). The State apparently had not limited itself to only one manner or means of violating the registration requirement as occurred here. Consequently, *Walmer* is inapposite to the issue presented here. Further, the case

13

is factually different from the case at hand. Although Walmer testified that he was unexpectedly thrown out of his mother's house, that evidence was disputed. Walmer's mother testified that he never lived with her; Walmer testified that he lived with his mother and his brother at various times.

Here, the evidence is undisputed that Thomas was served with a criminal trespass warning to stay away from the apartment where he had been living—the address registered with the appropriate authorities. In fact, notification of Thomas' residence at the subject address was provided to the apartment manager by law enforcement authorities, resulting in the criminal trespass warning. In light of these circumstances, there is no evidence that Thomas ever intended to move from the apartment where he was appropriately registered.

Thomas relies on *Green v. State*, 350 S.W.3d 617 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd), for the proposition that the seven-day advance notice requirement is triggered only if the person intends to change his address. In that case, Hunt (Green's wife) moved from the couple's Highland Avenue residence (the address appropriately registered with the authorities) taking all of Green's belongings with her while Green was out of town working. *Id*. at 620. Hunt was unaware of when Green found out she had moved their belongings from the Highland Avenue address. Green was found guilty of failing to report his intended move not later than the seventh day before the anticipated move date. *Id*. Green challenged his conviction, claiming the evidence was insufficient to prove he intended to move.

Under the indictment, Green was charged with failing to notify local law enforcement of a change in address seven days before the intended change. As in this case, Green was not

14

charged with the failure to notify law enforcement of his new address within seven days after changing the address. The only issue was whether "the State proved appellant intentionally, knowingly, or recklessly failed to register his intended address change."[15] *Id*. at 621. The testimony at trial showed that law enforcement and the prosecuting attorney both believed that a registered sex offender must give at least seven days advance notice before any change in address. *Id*. at 623. The court correctly recognized that this requirement is triggered only "'[i]f a person required to register under this chapter intends to change address.'" *Id*. (quoting TEX. CODE CRIM. PROC. ANN. art. 62.055(a)). "In addition, the deadline for reporting this intended address change is not seven days before the date on which the move actually occurs; rather, the deadline is seven days 'before the intended change.'" *Id*. The court recognized that

> There are various situations in which a registered sex offender's address may change without the offender having any intent to change address prior to the actual change of address. The offender may be barred from his current residence without warning or someone else may move the offender's property out of the residence and to another address without the offender's knowledge.

*Green*, 350 S.W.3d at 623. The court determined that there was no evidence that Green intentionally, knowingly, or recklessly failed to comply with his reporting requirements. *Id*.

---

[15]In this case, the indictment charged that Thomas "intentionally or knowingly" failed to report his intended address change seven days in advance of the move. In doing so, the State increased its burden in the indictment. Generally, "'[s]ince no state of mind is specified for article 62 offenses, proof that the defendant acted intentionally, knowingly, or recklessly is sufficient.'" *Harris v. State*, 364 S.W.3d 328, 335 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (quoting *Ford v. State*, 313 S.W.3d 434, 438 (Tex. App.—Waco 2010), *rev'd on other grounds*, 334 S.W.3d 230 (Tex. Crim. App. 2011)). "When the indictment alleges that a defendant 'intentionally or knowingly' failed to register as a sex offender, we review the record to determine if the State presented sufficient evidence of the defendant's intentional or knowing failure." *Id*.; *see also* TEX. PENAL CODE ANN. § 6.02(c) (West 2011) (providing if statute does not prescribe culpable mental state and one is required, "intent, knowledge, or recklessness suffices to establish criminal responsibility").

Here, Thomas was immediately banned from his registered address.[16]  The State presented no evidence that Thomas intended to change his address at least seven days before he was required to leave the apartment.  If anything, the evidence proves that he had no expectation or intention to change his address—certainly not at a time that would allow him to notify the authorities seven days in advance.  The evidence here does not prove, beyond a reasonable doubt, that Thomas intentionally or knowingly failed to register an intended change of address seven days before the intended change.

## III.    Conclusion

Because the evidence is legally insufficient to support the judgment, we reverse the judgment of the trial court and render a judgment of acquittal.


Jack Carter
Justice


Date Submitted:      August 21, 2013
Date Decided:        August 28, 2013

Publish

---

[16]The trespass warning began immediately on April 3, 2012, and is in effect until April 3, 2014.

16